UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAM SHATHAIA, SHATHAIA
BROTHERS PROPERTY, LLC and
SHATHAIA BROTHERS, INC. d/b/a
GRATIOT-MAYFIELD MARKET,

                Plaintiffs,                       Case No. 12-cv-13657
                                                Honorable Patrick J. Duggan

v.

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

                Defendant.
_____/

## OPINION AND ORDER (1) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from a fire at the Gratiot-Mayfield Market in Detroit,

Michigan, and Plaintiffs' claim for coverage for the resulting loss under an

insurance policy issued by Defendant Travelers Casualty Insurance Company of

America ("Travelers"), Policy of Insurance #I-680-2642N436-ACJ-11 ("the

Policy").  Presently before the Court are the parties' cross-motions for summary

judgment filed pursuant to Federal Rule of Civil Procedure 56.  The motions have

been fully briefed and the Court held a motion hearing on November 19, 2013.  For

the reasons that follow, Plaintiffs' motion is denied and Travelers' motion is

granted in part and denied in part.

## I.    Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must

present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513.

A court reviewing cross-motions for summary judgment, must evaluate each motion on its own, applying the above standard.  *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003) (citing *Taft Broad Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## II.    Factual and Procedural Background

In 2008, Plaintiff Tam Shathaia was presented with the opportunity to purchase the Gratiot-Mayfield Market ("GMM"), a party/convenience store located at 13105 Gratiot Avenue in Detroit, Michigan, from Yassir Hakim.  Mr. Shathaia formed two entities to complete the purchase: Plaintiff Shathaia Brothers Property,

-3-

LLC ("SBP") to purchase the building in which GMM operates and Plaintiff Shathaia Brothers, Inc. ("SB-Inc.") to purchase the business, including all of its inventory and equipment. Mr. Shathaia is the sole member or shareholder of these entities. On March 2, 2009, SB-Inc. registered with the State of Michigan to transact business under the assumed name of "Gratiot-Mayfield Market." (ECF No. 55 Ex. 1.)

On May 23, 2008, Mr. Shathaia and Mr. Hakim entered into a purchase agreement with respect to the business and property related to GMM. (ECF No. 41 Ex. 5.) In the agreement, Mr. Hakim agreed to sell and Mr. Shathaia agreed to buy the business (including its fixtures, equipment, goodwill, a covenant not to compete, and inventory) and the real estate. (*Id.*) Mr. Shathaia executed assignments on July 30, 2008, effective June 11, 2008, in which he assigned his purchase rights to SBP (with respect to the real estate) and SB-Inc. (with respect to the business). (*Id.*)

On February 27, 2009, SB-Inc. acquired GMM's business assets from Mr. Hakim for $103,147.39. (*Id.* Ex. 6.) On the same date, SBP executed a Land Contract to acquire the real estate on which GMM operated for $100,000.[1] (*Id.* Ex.

---

[1]The "Settlement Statement Sale of Property" for the transfer of the business assets and the "Land Contract" are dated "February 27, 2008" and "February 27,
(continued...)

7.)  The Land Contract required SBP to *inter alia* pay $1,680.99 each month for six

years, pay all taxes for the property, and keep the buildings and land insured

against loss and damage.  (*Id.*)  In a lease agreement dated July 22, 2008, SBP

leased the premises to SB-Inc. for a period of five years beginning August 1, 2008,

for a monthly rent of $1,700.00.  (ECF No. 52 Ex. 4.)  The lease agreement

required SB-Inc. to surrender the property at the end of the lease "in as good

condition as the commencement of the term."  (*Id.* ¶ 6.)  It required SBP to carry

fire and extended coverage insurance covering the premises "in an amount equal to

the replacement value of the building", although the agreement required SB-Inc. to

pay the entire cost of the insurance.  (*Id.* ¶ 13.)

On February 26, 2009, the Policy was issued providing "coverage" for *inter

alia* the "building" and the "business personal property" located at GMM's

address.  (ECF No. 52 Ex. 10.)  The "named insured" on the Policy is "Gratiot

Mayfield Market" with a mailing address of "13104 Gratiot Ave[nue]."  (*Id.* at

000295.)  The Policy insured the building located at 13104 Gratiot Avenue up to

$496,458.00 and the business personal property up to $250,000.00.  (*Id.* at

000298.)  Specifically, the coverage provisions provide in part:

---

[1](...continued)
2009" in different places.  Apparently the references to "2008" are in error.

A.      Coverage

We will pay for direct physical loss of or damage to Covered property
at the premises described in the Declarations caused by or resulting
from a Covered Cause of Loss.

    1.      Covered Property

        Covered Property, as used in this Coverage Form, means
the type of property described in this Paragraph A.1., and
limited in Paragraph A.2. . . .

    a.      Building, meaning the building or structure described in
the Declarations . . .

    b.      Business Personal Property located in or on the buildings
described in the Declarations . . ., including:

        (1)      Property owned by you and used in your business;
        (2)      Property of others that is in your care, custody or control;
        (3)      Your use interest as tenant in improvements and
betterments. . . .

(*Id*. at 000306.)  The Policy also provides coverage for actual loss of "business

income" sustained "due to the necessary 'suspension' of [the insured's]

'operations' during the 'period of restoration.'"  (*Id*. at 000307.)  The basis for

determining the amount Travelers will pay for business income loss is set forth in

the Policy.  (*Id*. at 000336-37.)  The Policy limits Travelers' "loss payment" with

respect to the building and personal property to the insured's "financial interest in

the Covered Property."  (*Id*. at 000333.)

-6-

The policy excludes coverage for loss or damage caused by *inter alia* "[d]ishonest or criminal acts by you [the insured], or any of your partners, 'members', officers, 'managers', 'employees' . . ., directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose . . .." (*Id*. at 000330.)  Pursuant to the Policy's terms, coverage also is void in the event of concealment, misrepresentation, or fraud by the insured:

> This Coverage Form is void in any case of fraud by you.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> a. This Coverage Form;
>
> b. The Covered Property;
>
> c. Your interest in the Covered Property;
>
> d. A claim under the Coverage Form.

(*Id*. at 000337.)  The insured must further satisfy certain conditions for coverage. (*Id*. at 000332-33.)  For example, the Policy requires the insured to send Travelers "a signed, sworn proof of loss containing the information [it] request[s] to investigate the claim."  (*Id*. at 000333.)

On March 16, 2011, GMM suffered direct physical loss caused by a fire. There is no dispute that the fire was caused by arson.

GMM submitted a claim to Travelers for coverage under the Policy after the

fire. Mr. Shathaia hired a public adjustor, Globe Midwest Adjusters International ("Globe") to assist him in filing the claim.  On June 10, 2011, Jeffrey Molino from Globe sent Travelers a sworn and signed proof of loss statement ("SSPOL"), signed by Mr. Shathaia.  (ECF No. 52.)  Mr. Molino states in his accompanying letter that an estimate for the building repair and claimed business personal property are attached but that "[t]he Business Income loss is an on-going item that will grow larger based on adjustment period and repair period."  (*Id.*)  He writes that they therefore "have left that item 'open' on the Sworn Statement in Proof of Loss."  (*Id.*)  The SSPOL lists the amount claimed as $454,231.64.  (*Id.*; ECF No. 52 Ex. 5 at 75.)

On several occasions, Travelers requested a detailed business income claim from Mr. Shathaia and Mr. Molino.  (Doc. 52 Ex. 13.)  Mr. Shathaia did not provide a figure for business income loss during his examination under oath ("EUO") or deposition during this litigation, nor was an amount provided in Plaintiffs' Rule 26(a)(1) initial disclosures or interrogatory responses.  According to Travelers, Plaintiffs also did not identify any documents in their initial disclosures or in response to Travelers' discovery requests supporting any itemization or claim for business income loss.  (Doc. 5 at Pg ID 1436.)  The first time Plaintiffs provided Travelers with the amount of the business income loss

claim ($237,000.00) was on July 26, 2013, when they submitted an expert report prepared by Mr. Molino. According to Plaintiffs, Travelers received the documentation used to determine the amount of the claim (including GMM's financial records) prior to Mr. Shathaia's EUO. (ECF No. 55 at Pg ID 1827, citing ECF No. 50 Ex. 5 at 68.)

For some unknown reason, however, Mr. Shathaia testified at his EUO that the amount contained in his SSPOL represented the amount he was claiming and that there were no additional amounts being claimed.[2] (ECF No. 50 Ex. 1 at 279.) Further, during his deposition in this litigation on August 5, 2013, Mr. Shathaia conceded to Travelers' counsel that he had not provided Travelers with an amount claimed for business income loss. (*Id.* Ex. 6 at 80.)

In a letter to Mr. Shathaia dated June 27, 2012, Travelers denied GMM's claims for coverage. (ECF No. 41 Ex. 14.) Travelers cited several reasons for its decision. First Travelers referred to its finding that the fire had been intentionally set by Mr. Shathaia or someone acting in privity with him or on his behalf. (*Id.*) Next Travelers informed Mr. Shathaia that it had concluded he made false statements with respect to the claims and Travelers' investigation and failed to

---

[2]The Court notes that Mr. Shathaia immigrated to the United States from Iraq in 1994 and, according to Plaintiffs, is limited in his ability to read and write English. (*See* ECF No. 41 at 9, 15.)

provide a satisfactory SSPOL.  (*Id.*)  Finally, in support of its decision to deny

building coverage, Travelers cited its finding that the real estate was owned by SB-

Inc. which is not an insured under the Policy.  (*Id.*)

Plaintiffs responded by filing the pending Complaint in Michigan state court

on July 30, 2012.  In their Complaint, Plaintiffs assert a single breach of contract

claim against Travelers.  Travelers removed the Complaint to federal court based

on diversity of citizenship on August 17, 2012.  Thereafter, on July 12, 2013,

Plaintiffs filed their pending motion for summary judgment.  Travelers filed its

cross-motion for summary judgment on August 30, 2013.

## III.   Plaintiffs' Motion

Plaintiffs argue in their summary judgment motion that there is no genuine

issue of material fact with respect to their entitlement to coverage under the Policy

and their claim that Travelers is wrongfully denying coverage.  Plaintiffs therefore

ask the Court to grant them summary judgment, find that they are entitled to partial

coverage in the amount of $454,231.64, order an expedited trial for determination

of business income, "extra expenses", and "extended business income" loss under

the Policy, and award them costs and attorney fees incurred as a result of

Travelers' wrongful denial of coverage.

In response to Plaintiffs' motion, Travelers presents facts creating an issue

for a jury as to whether Mr. Shathaia set or caused to be set the fire at GMM on

March 16, 2011, and thus whether he made false statements concerning the same.

First, the presence of gasoline in different areas of the sales floor and on the roof

provides independent evidence of the incendiary origins of the fire (particularly

where Mr. Shathaia testified that less than a gallon of gasoline was kept on the

premises to fuel a weed wacker and that it was stored near the back wall of the

storage area). The following additional facts could lead a jury to find that Mr.

Shathaia set the fire or caused it to be set:

> •Mr. Shathaia and his brother Joner Shathaia ("Jones") closed GMM
> the night of the fire. (ECF No. 41 Ex. 1 at 219-20.)

> •The front and side doors were locked when they left and the alarm
> was set. (*Id*.)

> •Mr. Shathaia and Joner are the only persons with keys to GMM and
> who know the alarm code. (*Id*. at 220.)

> •The roof hatch access in the back storage area was unlocked when
> DFD arrived, but the alarm system's motion sensors did not detect
> movement in that area before the front motion sensors detected heat
> and/or movement and triggered the alarm at about 2:19 a.m. (*Id*. Ex.
> 17 at 51.)

> •The motion sensors were operational until the fire disabled the
> system. (ECF No. 50 Ex. 16 at Pg ID 1357.)

> •The exterior (i.e. front and side) doors were secured when DFD
> arrived on the scene. (ECF No. 41 Ex. 1 at 227-28.)

•Mr. Shathaia had significant net gambling loss that had increased significantly by the end of 2010.[3]  (ECF No. 50 Ex. 8 at 7.)

Some of the "facts" Travelers identifies in response to Plaintiffs' motion to support its arson defense and/or fraud defense are not material or accurate.  Further, there are facts suggesting that Mr. Shathaia in fact was not responsible for setting or causing the fire to be set.[4]  Nevertheless, based on all of the evidence, the Court concludes that the issue must be presented to a jury.

As such, as stated on the record at the motion hearing, the Court is denying Plaintiffs' motion for summary judgment.

---

[3]At the motion hearing, Plaintiffs' counsel argued that the method used to calculate Mr. Shathaia's supposed gambling loss is specious.  Plaintiffs, however, have not identified evidence to refute this calculation at this stage of the proceedings.

[4]For example: SBP regularly paid the monthly amount due on the land contract before and for even two months after the fire (ECF No. 50 Ex. 2 at 69-70; Ex. 8 at Pg ID 1220); SB-Inc. regularly made its lease payments, including for the month of the fire (*id*. Ex. 2 at 100.); payments on the line of credit used to finance a portion of the purchase price were made on a monthly basis and no amounts were past due as of the date of the fire (*id*. Ex. 8 at Pg ID 1220); GMM's sales had increased in the two years since SB-Inc.'s acquisition (*id*. at Pg ID 1221-22 ), even if sales were down for a single month prior to the fire (*id*. at 1221-22, 1228-29); SB-Inc. had reinvested profits to make over $35,000 in physical improvements and had tripled GMM's inventory by February 2011 (*id*. Ex. 2 at 13; Ex. 8 at Pg ID 1222); Mr. Shathaia was current on the payments due for his home mortgage (*id*. Ex. 8 at Pg ID 1224); and there are no indications of any past due payments or late charges associated with Mr. Shathaia's or SB-Inc.'s credit cards. (Ex. 8 at Pg ID 1221, 1224.)

-12-

IV.    **Travelers' Motion**

A.    **Argument**

Travelers seeks partial summary judgment in its motion with respect to several issues.  First, Travelers argues that SBP and Mr. Shathaia lack standing to sue for breach of contract because neither are named as an insured under the Policy.  Next, Travelers contends that because GMM did not own the subject building and has no financial interest in it, GMM suffered no compensable loss to be entitled to building coverage.  Third, Travelers asks the Court to reject Plaintiffs' business income claim due to their failure to submit a SSPOL with respect to that claim in accordance with the Policy's terms.  Travelers also argues that Plaintiffs' business income loss claim and should be estopped from asserting it.  Finally, Travelers claims that Plaintiffs are not entitled under the law or the Policy's terms to their requested "hardship damages" or public adjuster or attorney fees.

B.    **Applicable Law and Analysis**

1.    **SBP's and Mr. Shathaia's standing to sue for breach of the insurance contract**

Travelers maintains that the Policy does not name SBP or Mr. Shathaia as an insured and therefore they lack standing to sue Travelers for breach of contract.

Plaintiffs do not directly address this issue in response to Travelers' motion.

"An insurance policy constitutes a contractual agreement between the insurer and the insured." *West Am. Ins. Co. v. Meridian Mut. Ins. Co.*, 230 Mich. App. 305, 310, 583 N.W.2d 548, 550 (1998) (citing *Zurich-Am. Ins. Co. v. Amerisure Ins. Co.*, 215 Mich. App. 526, 530, 547 N.W.2d 52 (1996)); *see also First Mercury Ins. Co. v. Christopher K. Corp.*, No. 09-14918, 2010 WL 4683928, at *2 (E.D. Mich. Nov. 10, 2010) (unpublished op.).  "The insurer's obligations run to the insured alone." *Christopher K. Corp.*, 2010 WL 4683928, at *2.  An ownership interest in property covered by an insurance policy does not provide the owner with standing to sue, unless it is the named insured or an intended third-party beneficiary of the contract.  *Id.* (citing *Schafer Oil Co. v. Universal Underwriters Ins. Co.*, 820 F. Supp. 321, 323 (E.D. Mich. 1993)).

Michigan's third-party beneficiary statute provides in relevant part:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

Mich. Comp. Laws § 600.1405.  Whether a promise has been made to benefit a

-14-

person not a party to a contract is determined using an objective standard to discern the contracting parties' intentions from the contract itself. *Schafer Oil Co.*, 820 F. Supp. at 323 (citations omitted). The contracting parties' motives and subjective intentions are not relevant. *Id.* (citing *Guardian Depositors Corp. v. Brown*, 290 Mich. 433, 287 N.W. 798 (1939)). Third-party beneficiary status is not conferred upon every person who happens to benefit in some way from the contract. *Id.*; *see also Brunsell v. Zeeland*, 467 Mich. 293, 297 651 N.W.2d 388, 390 (2002) ("[T]he plain language of this [Michigan's third-party beneficiary] statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise . . ..")

Nothing in the Policy suggests that Travelers intended to provide coverage to Mr. Shathaia (personally). As such, the Court concludes that Mr. Shathaia lacks standing to pursue a breach of contract claim against Travelers and is granting Travelers' request for summary judgment as to his claim against it. For the reasons discussed below, however, the Court finds a genuine issue of material fact with respect to whether the parties intended SBP to be included as a named insured under the Policy. If the trier of fact finds that this was not the parties' intent, the Court would find nothing in the Policy to confer third-party beneficiary status on this entity. Nevertheless, this conclusion has no bearing on Travelers' obligations

-15-

to provide building coverage for the additional reasons discussed below.

### 2.      Whether "GMM" has suffered a compensable loss

Travelers argues that it owes no obligation to provide coverage for the

building loss because "Gratiot-Mayfield Market"– the only named insured– does

not own the building.  Plaintiffs assert the following in response: (1) the Policy

plainly provides coverage for the building up to the policy limit of $496,458.00;

(2) GMM is an assumed name for SBP and SB-Inc. and Plaintiffs do not know

which entity owns what; and (3) GMM is a mere legal fiction and thus construing

the contract as only protecting GMM would render the Policy illusory.

Plaintiffs' last argument is premised on their incorrect understanding that

Travelers is denouncing *all* coverage based on a lack of ownership interest (i.e. for

the building because it is owned by SBP *and* the business personal property

because it is owned by SB-Inc.).  If this were Travelers' argument, the Policy

might be found to be illusory.[5]  As clarified in Travelers' reply brief, however, its

argument concerning ownership applies only to the claim for building loss and it

_____

[5]An "illusory contract" is "an agreement in which one party gives as
consideration a promise that is so unsubstantial as to impose no obligation" . . . "in
the realm of insurance . . . '[t]he doctrine of illusory coverage' encompasses a rule
requiring an insurance policy to be interpreted so that it is not merely a delusion to
the insured."  *Cincinnati Ins. Co. v. Hall*, No. 308002, 2013 WL 3107640, at *5
(Mich. Ct. App. June 20, 2013) (unpublished op.).

-16-

understands SB-Inc.– in whose name GMM does business– to be the insured.

To the extent Plaintiffs assert that they did not know which entity owns what, Plaintiffs' second argument is frivolous. Nevertheless, the Policy only identifies "Gratiot Mayfield Market" as the named insured. There is no evidence suggesting that Travelers was aware that "GMM" was an assumed named for SB-Inc., only, when it issued the Policy. When asked by the Court at the motion hearing, Travelers' counsel indicated that the Michigan Filing Endorsement was not in the independent insurance agent's files. There is evidence that Plaintiffs set up different entities for the purpose of purchasing the building and business; however, there also is evidence that they operated the entities as one. For example, Plaintiffs' counsel indicated at the motion hearing that only SB-Inc. had a bank account and that all payments (whether contractually owed by SB-Inc. or SBP) were paid from that account. As such, and given that the Policy reflects a clear intent to cover the building in which the market operated, the Court finds a question of fact as to who the parties' intended the named insured to be under the Policy. But even if the trier of fact concluded that SB-Inc. was the only intended insured, the Court holds that it has a compensable loss.

In the Policy's coverage provisions, the covered property includes the "Building, meaning the building or structure described in the Declarations . . .."

-17-

(ECF No. 52 at 000306.)  The subject building is listed on the Declarations.  (*Id*. at 000298.)  The Policy does not limit building coverage to property owned by the insured; whereas such a limitation is specifically stated for other covered property, such as business personal property.  (*See, e.g., id*. at 00306, defining the covered "business personal property" as including "[p]roperty owned by *you* and used in *your* business" (emphasis added).)  In fact in Section III of the Policy, titled "Limits of Insurance," the Policy specifically indicates that the premises covered need not be owned by the insured, but may be property rented.  (*Id*. at 000372.)  While the Policy's "Loss Payment" provision states that Travelers "will not pay you more than your financial interest in the Covered Property" (*id*. at 000333), the Court finds that SB-Inc. has a financial interest equal to the cost of repairing or replacing the building.

The term "financial interest" is not defined in the Policy.  Therefore it is accorded its plain and ordinary meaning.  *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 199, 702 N.W.2d 106, 113 (2005) (citation omitted).  Michigan courts have defined the term as follows:

> "Financial is commonly understood to pertain or relate to money matters; pecuniary. . . . Interest may be understood to pertain to . . . a business, cause, *etc.*, in which a person has a share, concern or responsibility. . . . a legal share, right, or title, as in the ownership of property or in a business undertaking . . .."

*Anika & Assoc., Inc. v. Hartford Cas. Ins. Co.*, No. 11-12534, 2013 WL 1499532,

at *9 (E.D. Mich. Apr. 10, 2013) (unpublished op.) (quoting *J.D.'s Pub & Grub,*

*Inc. v. North Pointe Ins. Co.*, No. 256634, 2006 WL 2271306, at * (Mich. Ct. App.

Aug. 8, 2006) (unpublished op.) (internal quotation marks and citation omitted)).[6]

    This Court was not able to locate any Michigan cases addressing whether a

tenant has a financial interest in the property it rents and Travelers indicates that

the issue has never been addressed in Michigan.  (*See* ECF No. 50 at Pg ID 1444.)

However, several treatises on insurance law indicate and cite cases finding that "[a]

lessee has an insurable interest in the leased property, and in the improvements

which he or she places on the leased property." 44 C.J.S. Insurance § 346 (2013);

*see also* 44 Am. Jur. 2d Ins. § 955 (2013); 3 Couch on Ins. § 42:51 (3d ed. 2013).

The same authorities provide that this is particularly true where the lessee is

contractually obligated to surrender the leased premises in the same condition as

when the lessee took possession.  *Id.*; *see also Burroughs Corp. v. Barry*, 380 F.2d

---

    [6]The Michigan courts' interpretation of the related term "insurable interest"
provides guidance as well.  The Michigan Court of Appeals has explained:
"Whether an individual has an insurable interest is not determined by the label
attached to the insured's property right, but rather by whether the individual will
suffer a direct pecuniary loss as a result of the destruction of the property." *Secura
Ins. Co. v. Pioneer State Mut. Ins. Co.*, 188 Mich. App. 413, 470 N.W.2d 415, 416
(1991) (citing *Crossman v. Am. Ins. Co. of Newark*, 198 Mich. 304, 311, 164 N.W.
428 (1917)).

427 (6th Cir. 1967) (citing cases to find it "well settle[d] that one who derives a benefit from the continued existence of a chattel or would be damaged by its destruction has an insurable interest, whether he has or has not any title in the property itself . . ." and that "[t]his is particularly true where the lessee has agreed to keep the property insured and in good order and to return the property, or its value, at the end of the term.")  A case cited by Travelers for a different proposition also supports a finding that a tenant may have an insurable interest in the building in which it operates a business.  *See Asmaro v. Jefferson Ins. Co. of New York*, 574 N.E.2d 1118, 1121 (Ohio Ct. App. 1989) (finding that the insurer was not liable to the building owner as he was not a named insured, but concluding that the insured tenant had an insurable interest in the building in which it operated a neighborhood grocery store which depended on walk-in customers).

As Travelers points out, the agreement between SBP and SB-Inc. for the latter's lease of the premises, required SBP to carry fire and extended coverage insurance covering the premises during its term.  (ECF No. 50 Ex. 4 ¶ 13.)  Notably, however, SB-Inc. was required to pay the entire cost of the insurance on the building.  (*Id.*)  Perhaps more importantly, SB-Inc. was obligated under the "Care of Premises" provision of the lease to surrender the premises at the end of the lease ". . . in as good condition as the commencement of the term, reasonable

-20-

use and wear thereof excepted." (*Id*. ¶ 6.)  This was a different provision than the "Maintenance and Repair" provision referred to by Travelers' counsel at the motion hearing.  (*See id*. ¶ 11.)

Contrary to the representation also made by Travelers' counsel at the motion hearing, paragraph fourteen of the lease does not clearly require SBP to rebuild and restore the building in the event of a fire.  Paragraph fourteen only addresses whether rent must be paid in the case of fire damage.  Additionally in doing so, the provision creates some ambiguity as to who must insure the premises.  This paragraph states in its entirety:

> DAMAGE BY FIRE OR OTHER CASUALTY.  If the building shall be damaged or destroyed in whole or in part by fire or other cause and is rebuilt and restored to a good and tenantable condition by Landlord within a reasonable time, the rental shall abate, entirely in case the entire Demised Premises are untenantable, until same shall be restored to a tenantable condition.  *If Tenant shall fail to adjusts its own insurance within a reasonable time and as a result thereof the repairing and restoration is delayed*, there shall be no abatement of rental as above provided during the term of such delay; and the Tenant shall use any part of the Demised Premises for storage during the period of repair, a reasonable charge for which shall be made against Tenant.  In case the building is not repaired or restored, this Lease shall be terminated.

(*Id*. ¶ 14, emphasis added.)

For these reasons, the Court finds a genuine issue of material fact as to whether SBP was intended to be included as a named insured under the Policy.

-21-

Additionally, the Court concludes that, even if SBP was not, SB-Inc. had a contractual duty to repair or replace the building when it was damaged by fire during the term of the lease.  As such, SB-Inc. had a financial interest in the building where it operated GMM.

For these reasons, the Court is denying Travelers' request for summary judgment based on its argument that Plaintiffs cannot recover on the building loss claim.

### 3.   Whether SB-Inc.'s business income claim should be dismissed

Travelers argues that SB-Inc.'s business income claim should be dismissed due to Plaintiffs' failure to comply with the Policy's SSPOL requirement and/or because they waived such a claim.

As the Sixth Circuit Court of Appeals has recognized, under Michigan law, "[i]f so provided in an insurance policy, an insured's obligation to provide proof of loss is a condition precedent to his receipt of benefits."  *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 447 (2010); *see also Dellar v. Frankenmuth Mut. Ins. Co.*, 173 Mich. App. 138, 145, 433 N.W.2d 380, 383 (1988) ("Clearly, the failure to file a signed and sworn proof of loss within sixty days of the loss bars recovery on a claim without regard to whether the insurer is prejudiced by such failure.").

-22-

The Sixth Circuit further recognizes, however, that "Michigan law requires only 'substantial compliance' with the proof-of-loss requirement." *Id.* (citing *Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 570 (6th Cir. 2005)); *see also Jajo v. Hartford Cas. Ins. Co.*, No. 237955, 2002 WL 31940977, at *1 (Mich. Ct. App. Nov. 26, 2002) (unpublished op.) (citing *Gibson v. Grp. Ins. Co.*, 142 Mich. App. 271, 275, 369 N.W.2d 484, 486 (1985)).

In determining whether there has been "substantial compliance" with a policy's proof of loss requirement, Michigan courts consider the three identified policy objectives of the requirement: "'(1) allowing the insurer an opportunity to investigate the loss; (2) allowing the insurer to estimate its rights and liabilities; and (3) preventing fraud.'" *Westfield Ins. Co.*, 132 F. App'x at 574-75 (quoting *Wineholt v. Cincinnati Ins. Co.*, 179 F. Supp. 2d 742, 752 (W.D. Mich 2001)). The district court advised in *Wineholt* that substantial compliance requires "more than a minimal effort." *Id.* Further, "the insured must make a 'reasonable effort to provide information reasonably within its possession and with a sufficient degree of particularity to allow the insurer to make an informed review of the claim.'" *Id.* Generally, the question of whether an insured has substantially complied with a proof-of-loss requirement is a question of fact not to be decided on summary judgment. *Korn*, 382 F. App'x at 448 (citing *Griswold Properties, LLC v.*

-23-

*Lexington Ins. Co.*, 275 Mich. App. 543, 574, 740 N.W.2d 659, 677 (2007)).  In this case, the Court finds that a reasonable fact-finder could conclude that Plaintiffs did not waive SB-Inc.'s business income claim and substantially complied with the Policy's proof-of-loss requirement.

A SSPOL, signed by Mr. Shathaia, was submitted to Travelers on June 10, 2011, which provided specific amounts for SB-Inc's building and business personal property claims.  The SSPOL specifically states that "Business Income Loss and Claim remain 'open'".  (ECF No. 50 Ex. 7 at Pg ID 1186.)  Mr. Molino's letter accompanying the SSPOL explained that "[t]he Business Income loss is an on-going item that will grow larger based on adjustment period and repair period. Therefore we have left that item 'open' on the Sworn Statement in Proof of Loss." (*Id*. at Pg ID 1185.)  Travelers received this information before Mr. Shathaia stated (or rather misstated) during his EUO that SB-Inc. was making no additional claims other than the covered property and business personal property claims.

It is not evident from the record why Plaintiffs did not provide a specific figure for the business income claim until late in this litigation.  Nevertheless, Travelers was provided the documentation used to calculate the claim during the claim investigation process and received a figure for the amount claimed prior to Mr. Shathaia's deposition in this litigation.  As such, the Court believes that a trier

of fact could find the three intended purposes of the proof-of-loss requirement satisfied by Plaintiffs.

The Court therefore denies summary judgment to Travelers with respect to Plaintiffs' business income claim.

### 4.    Whether Plaintiffs' claim for "hardship damages" should be dismissed

Travelers seeks summary judgment with respect to Plaintiffs' claim for $300,000.00 in "hardship damages" which include "lost opportunity" and alleged financial and emotional distress.  According to Travelers, these damages are speculative and not factually grounded, not covered by the Policy, and unavailable as a matter of law.

In a report he prepared for this litigation, Mr. Molino includes certain "hardship damages" as damages sustained as a result of the fire.  (ECF No. 50 Ex. 9.)  Mr. Molino estimates the value of these damages at $300,000.  (*Id.* at Pg ID 1238.)  As examples of what comprises these damages, Mr. Molino lists: the land contract payments SBP was not able to make following the fire and the interest accruing on those payments; investments the "insured" would have been able to make had he enjoyed a consistent stream of income from his business; and emotional distress.  (*Id.*)  Mr. Molino testified during his deposition in this

litigation that the value placed on these damages was purely speculative, not calculated, and not supported by documentation.  (ECF No. 52 at 92-97.)

"Michigan law follows the rule of *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854), that 'the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made.'"  *Salamey v. Aetna Cas. & Sur. Co.*, 741 F.2d 874, 877 (6th Cir. 1984) (quoting *Kerwin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 414, 295 N.W.2d 50, 52-53 (1980)).  In the context of commercial contracts, this "generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it."  *Kerwin*, 409 Mich. at 415, 295 N.W.2d at 53.  "The damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract."  *Id*. at 417, 295 N.W.2d at 54.

The Policy does not contemplate Travelers' payment of the "hardship damages" identified by Mr. Molino.  In fact, the Policy specifically limits coverage to the "Limit of Insurance shown in the Declarations, Schedules, Coverage Forms, or endorsements."  (ECF No. 52 Ex. 10 at 000331.)  Further, the only "hardship damage" that might naturally flow from Travelers' alleged breach is SBP's inability to continue making timely payments on the land contract due the GMM's

-26-

loss of revenue and inability to pay its rent.  Mr. Molino acknowledged, however, that he is unaware of any demand by the land contract owner for the past due payments or for interest on those payments.  (ECF No. 52 Ex. 5 at 91-92.)

For these reasons, and because the Court agrees with Travelers that Plaintiffs' damages are speculative, the Court is granting summary judgment to Travelers on Plaintiffs' claim for "hardship damages."

### 5. Whether Plaintiffs can recover public adjuster or attorney fees

Lastly, Travelers seeks summary judgment with respect to Plaintiffs' claim for public adjuster and attorney fees.  The Policy explicitly provides that Travelers will not provide coverage for these fees when incurred as part of the claim process:

Claim Data Expense

(1)   We will pay the reasonable expenses you incur in preparing claim data when we require such data to show the extent of loss. This includes the cost of taking inventories, making appraisals, preparing income statements, and preparing other documentation.

(2) Under this Additional Coverage, we will not pay for:

(a)   Any expenses incurred, directed, or billed by or payable to attorneys, insurance adjusters or their associates or subsidiaries.

(ECF No. 50 Ex. 10 at 000310).  Further, as to attorney fees, Michigan law is clear

that an insured is not entitled to recover such fees as an element of damages against an insurer for breach of contract. *Burnside v. State Farm Fire and Cas. Co.*, 208 Mich. App. 422, 528 N.W.2d 749 (1995) (expressly rejecting the Sixth Circuit's holding in *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273 (1985), and holding that "the application of the American rule precludes recovery of attorney fees incurred as a result of an insurer's bad-faith refusal to pay a claim."); *see also Paul Revere Life Ins. Co. v. Wilner*, Nos. 98-2172, 98-2230, 2000 WL 1290365, at *3 (6th Cir. Sept. 1, 2000) (unpublished op.) (following *Burnside* to conclude that the insured was not entitled to attorney fees even if the insurer impermissibly contested the policy).

The Court therefore is granting summary judgment to Travelers with respect to Plaintiffs' claim for public adjuster and attorney fees.

## V.    Conclusion

For the reasons discussed, the Court finds a genuine issue of material fact with respect to whether: (1) coverage under the Policy is void due to the defenses asserted by Travelers; (2) SBP is an intended insured under the Policy; and, (3) Plaintiffs can recover on the business income claim.  The Court finds as a matter of law that Plaintiffs can recover on their property claim, even if SB-Inc. is the only intended insured and even though it is not the owner of the property (assuming that

-28-

Travelers' arson defense or fraud defense do not bar recovery).  The Court, however, finds no genuine issue of material fact and concludes as a matter of law that: (1) Mr. Shathaia lacks standing to pursue a breach of contract claim against Travelers; (2) Plaintiffs are not entitled to their claimed "hardship damages"; and (3) public adjuster and attorney fees are not recoverable in this breach of contract action.

Accordingly,

**IT IS ORDERED**, that Plaintiffs' motion for summary judgment is **DENIED**;

**IT IS FURTHER ORDERED**, that Travelers' motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**, as such Plaintiff Tam Shathaia is **DISMISSED AS A PARTY** to this litigation;

**IT IS FURTHER ORDERED**, that a Final Pretrial Conference is scheduled for December 9, 2013 at 2:00 p.m. in Room 867 of the Theodore Levin U.S. Courthouse, 231 W. Lafayette, Detroit, Michigan 48226.


DATED: November 21, 2013                s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE
Copies to:
Raechel M. Badalamenti, Esq.
Elizabeth P. Roberts, Esq.
Michele A. Chapnick, Esq.

-29-