UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAM SHATHAIA, SHATHAIA
BROTHERS PROPERTY, LLC and
SHATHAIA BROTHERS, INC. d/b/a
GRATIOT-MAYFIELD MARKET,

        Plaintiffs,                  Case No. 12-cv-13657
                                                  Honorable Patrick J. Duggan
v.

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

        Defendant.
_____/

## OPINION AND ORDER REGARDING DEFENDANT'S MOTIONS IN LIMINE (ECF NOS. 45-48)

This lawsuit, currently scheduled for trial on January 21, 2014, arises from a fire at the Gratiot-Mayfield Market ("GMM") in Detroit, Michigan, and Plaintiffs' claims for coverage for the resulting loss under an insurance policy issued by Defendant Travelers Casualty Insurance Company of America ("Travelers"), Policy of Insurance #I-680-2642N436-ACJ-11 ("the Policy"). Presently before the Court are the following motions *in limine* filed Travelers on August 30, 2013:

- •To exclude evidence regarding the arrest of two individuals for larceny five hours after the fire except for the limited purpose of proving fraud (ECF No. 45);

- •To preclude evidence, argument and/or testimony regarding

Travelers' alleged wrongful denial of Plaintiffs' claims (ECF No. 46);

•To exclude the opinion testimony of Plaintiffs' expert, Jeff Molino (ECF No. 47); and

•To exclude any evidence, argument and/or testimony regarding alleged other similar fires (ECF No. 48).

Plaintiffs filed a consolidated response to the motions on September 27, 2013. (ECF No. 56.) Travelers filed reply briefs on October 11, 2013. (ECF Nos. 63-65.)

**To Exclude Evidence Regarding the Arrest of Two Individuals for larceny Five Hours After the Fire Except for the Limited Purpose of Proving Fraud**

The fire at GMM occurred at 2:19 a.m. on March 16, 2011. Shortly before 7:30 a.m., hours after the scene had been cleared, Detroit Police Officers Shane Palmer and Aaron Kraszewski received a radio run to GMM for a breaking and entering in progress. (ECF No. 50-20.) When the officers arrived at GMM, they saw the side door cracked upon. (*Id*.) They then found and arrested two individuals, Cavin Womack and Randolph Seeney, who had taken two watches, 35 DVD's, games, and money from the store. (*Id*.) When the officers arrived, they found one of the individuals inside GMM's back storage area and heard the second individual on the sales floor. (*Id*.)

Anticipating that Plaintiffs will seek to introduce this evidence to suggest that Womack and Seeney were responsible for the fire, Travelers moves to

-2-

preclude the admission of this evidence for that purpose, arguing that it is speculative and not relevant. Travelers contends that the only purpose for which this evidence should be admitted is to show Plaintiffs' "concealment, misrepresentation, and fraud." According to Travelers, Mr. Shathaia contacted Travelers, the Liquor Control Commission, and the Lottery Commission "within hours after the fire to misleadingly report that Plaintiffs' building was broken into and a fire was set to cover up the theft." (ECF No. 45 at 8 n.2.)

Plaintiffs contend that evidence of Womack's and Seeney's theft at GMM within hours of the fire and so early in the morning is relevant to who caused the fire. Plaintiffs argue that a reasonable jury could conclude that two people arrested for larceny from a store shortly after it was burned down were responsible for causing the fire to be set in order to create an opportunity for the theft. In other words, Plaintiffs maintain that a jury could reasonably infer from Womack's and Seeney's actions within hours of the fire that they had a motive for and were connected to the arson in some way.[1]

---

[1]Travelers appears to understand Plaintiffs to be claiming that the break-in occurred before the fire. The Court does not understand Plaintiffs to be arguing this version of the events. Instead, it is the Court's understanding that Plaintiffs' theory is that Womack and Seeney first set or caused the fire to be set (and therefore the absence of gasoline or burns on them may prove nothing) to create an opportunity to gain access to the goods within the store.

Plaintiffs' theory may be speculative; however, the evidence on which it is based is not. Further, the strength of Plaintiffs' argument does not destroy its relevance. The issue of whether Mr. Shathaia or someone else started the fire is the primary issue for trial and Plaintiffs' theory and evidence offer an alternative to Travelers' argument that only Mr. Shathaia had a motive for starting the fire.[2] Thus the Court does not believe that the introduction of this evidence will divert the jury's attention from the principle issues in the case, as Travelers argues as the unfair prejudice warranting its exclusion. It is for the jury to decide whether to accept or reject Plaintiffs' arguments from the evidence and, as such, the Court concludes that Travelers' motion to exclude evidence regarding Womack's and Seeney's arrest should be denied.

**To Preclude Evidence, Argument and/or Testimony Regarding Travelers' Alleged Wrongful Denial of Plaintiffs' Claims**

Travelers seeks to preclude Plaintiffs from presenting any evidence, argument, or testimony that Travelers allegedly wrongfully denied Plaintiffs' insurance claims. In this motion, Travelers also asks the Court to give a limiting

---

[2]In response to Plaintiffs' insurance claim and during this litigation, Travelers also has contended that Plaintiffs fraudulently reported the contents stolen from GMM. In this Court's view, evidence of Seeney's and Womack's arrest is relevant to this issue as well, as it demonstrates that the store and its contents were accessible to would-be thieves after the fire.

instruction "barring Plaintiffs from introducing any evidence or argument regarding Plaintiffs' alleged entitlement to actual damages and/or consequential damages, costs and/or attorneys' fees allegedly resulting from Travelers' wrongful denial of Plaintiffs' claim" and instructing that Travelers' alleged untimeliness in paying the claims is relevant only to whether penalty interest should be awarded.

As an initial matter, in its November 21, 2013 opinion and order ruling on the parties' cross-motions for summary judgment, the Court addressed the forms of damages available to Plaintiffs if they prevail on their breach of contract claim against Travelers. As the Court held, Plaintiffs are not entitled to public adjuster or attorney fees.[3] (ECF No. 66 at 27-28.) Plaintiffs may argue to the jury, however, that they are entitled to those damages that "'arise naturally from the breach [of the insurance policy] or those that were in the contemplation of the parties at the time the contract was made.'" (*Id.* at 66, quoting *Salamey v. Aetna Cas. & Sur. Co.*, 741 F.2d 874, 877 (6th Cir. 1984) (additional quotation marks and citation omitted).) This may be actual and/or consequential damages resulting from Travelers' breach

---

[3]To the extent Travelers is seeking to preclude Plaintiffs from seeking other costs, the Court does not know which costs are at issue. If Plaintiffs prevail in their breach of contract claim, statute and court rule define what costs they may recoup. Unless and until Plaintiffs file their bill of costs, the Court need not address the issue. Surely an award of such costs is not a jury issue and thus Plaintiffs have no reason to present evidence or argument to the jury regarding such costs.

of contract, if a breach is found. Thus the Court declines Travelers' request for a limiting instruction barring Plaintiffs from introducing any evidence or argument regarding their entitlement to such damages.

Travelers either breached or did not breach the insurance contract. Plaintiffs' breach of contract claim is not dependent on whether Travelers acted "wrongfully"– which the Court believes the parties are using interchangeably with "in bad faith". If the jury finds that Travelers breached the insurance contract, whether it acted "wrongfully" is relevant only in the assessment of whether penalty interest should be awarded. *See* Mich. Comp. Laws § 500.2006.

> Section 500.2006 provides in relevant part that
>
> A person must pay on a timely basis to its insured . . . the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured . . . 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice *unless the claim is reasonably in dispute*.

Mich. Comp. Laws § 500.2006(1) (emphasis added). Thus, according to the language of the statute, the precise question is whether Plaintiffs' claims were "reasonably in dispute." *Id*. Michigan courts hold, however, that this is a question for the court rather than the jury. *See Nationwide Life Ins. Co. v. Keene*, No. 11-12422, 2012 WL 113532, at * (E.D. Mich. Jan. 13, 2013) (Cohn, J.) (citing *All Am.*

*Life & Cas. Co. v. Oceanic Trade Alliance Council Int'l*, 756 F.2d 474, 481 (6th Cir. 1985) (providing that "[t]he determination of what is 'reasonably in dispute' is question of law for the Court."). The Court therefore finds no relevant purpose for Plaintiffs to present evidence or argument to the jury concerning whether Travelers' "wrongfully" denied Plaintiffs' claims.

For the above reasons, the Court is granting in part and denying in part Travelers' motion to preclude evidence, argument, and/or testimony regarding its alleged wrongful denial of Plaintiffs' claims.

**To Exclude the Opinion Testimony of Plaintiffs' Expert Jeff Molino**

Plaintiffs have identified Jeffrey Molino as their expert for purposes of calculating the loss resulting from the subject fire. Travelers moves to exclude Mr. Molino's testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

First Travelers argues that Mr. Molino lacks sufficient knowledge, skill, experience, training, or education to qualify him to render his opinions. Travelers points out that Mr. Molino is not a trained or certified accountant and that his "only experience is his role as a public adjuster for 14 years." (ECF No. 47 at 5.) Next, Travelers argues that Mr. Molino's opinions regarding Plaintiffs' business income and so-called "hardship damages" are not the product of reliable principles and

methods.[4] Lastly, Travelers contends that Mr. Molino's opinion "is an improper fit – it is not applied to the facts." (*Id*. at 13.) With respect to this argument, Travelers states that Mr. Molino "relies upon facts or assumptions that do not pertain to the subject loss and are admittedly based upon rank speculation and conjecture." (*Id*.) Travelers goes on to explain that he espouses opinions regarding damages that he admits are not even covered by the Policy (i.e. certain "hardship damages") and asserts a business income loss when "he acknowledged that the insured knowingly failed to submit a business income loss claim during the claim submission . . .." (*Id*. at 14.)

Federal Rule of Evidence 702 addresses the admissibility of expert witness testimony, providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable, principles and methods; and

---

[4]In its November 21, 2013 opinion and order addressing the parties' cross-motions for summary judgment, the Court held that Plaintiffs are precluded from seeking their claims "hardship damages." (ECF No. 66 at 25-27.)

>(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The United States Supreme Court has interpreted the rule as imparting a "gatekeeping" responsibility on district courts to exclude unreliable and irrelevant expert testimony from trial. *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2798). Stated differently, Rule 702 requires district courts to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2799. The trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93, 113 S. Ct. at 2796-97).

The considerations for making these two determinations– reliability and then relevance of the expert's opinion testimony– were summarized by the Sixth Circuit in *Smelser v. Norfolk Southern Railway. Company*, 105 F.3d 299, 302 (6th Cir. 1997). The *Smelser* court provided:

>First, the court is to determine "whether the experts' testimony reflects 'scientific knowledge,' whether their findings are 'derived by the scientific method,' and whether their work product amounts to 'good

-9-

> science.'" *Daubert* (on Remand), 43 F.3d [1311] at 1315 [(9th Cir. 1995)] (quoting *Daubert*, 509 U.S. at 590, 593, 113 S. Ct. at 2795, 2797). An expert opinion that is based on scientifically valid principles will satisfy Fed. R. Evid. 702; an expert's subjective belief or unsupported speculation will not. *Daubert* (on Remand), 43 F.3d at 1316.
>
> Second, the court "must ensure that the proposed expert testimony is relevant to the task at hand." *Id.* at 1315. The Supreme Court referred to this as the "fit" requirement. *Id.* When making a preliminary finding regarding an expert's qualifications under Fed. R. Evid. 104(a), the court is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), cert. denied, 513 U.S. 1111, 115 S. Ct. 902, 130 L.Ed.2d 786 (1995). The trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony.
>
> When considering reliability, the trial court must focus on the soundness of the expert's methodology and not the correctness of his conclusions. *Daubert* (on Remand), 43 F.3d at 1318.

*Smelser*, 105 F.3d at 303.

The Court finds that Mr. Molino is qualified to provide his opinions regarding Plaintiffs' losses resulting from the fire. He has served as a public adjuster for fourteen years and was an insurance adjuster for eleven years before that. (ECF No. 74-3 at 8.) As such, he has gained extensive experience preparing insurance claims for insurance companies and on behalf of policyholders. (*Id.* at 9.) In other words, Mr. Molino has spent the last twenty-five years valuing losses

claimed under insurance policies. Mr. Molino also has a Bachelor's Degree in Business Administration. (*Id.* at 8.)

The Court also finds that Mr. Molino's proposed testimony is relevant and based on sound methodologies. He or someone under his direction at his firm, Globe Midwest/ Adjusters International ("Globe Midwest"), conducted a physical inventory of GMM's stock, furniture, fixtures, and equipment, gathered and reviewed GMM's financial documents and documents reflecting pre-fire inventory, spoke with Mr. Shathaia about his expenses, and examined the damaged building. (*See, e.g., id.* at 12-15, 26, 44-46.) Mr. Molino's reliance on other individuals to do the "hands-on work" does not render his opinions unreliable. *See Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796 (explaining that "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation"); *see also Haley v. Farm Bur. Ins. Co.*, No. 302158, 2013 WL 4525924, at *8-9 (Mich. Ct. App. Aug. 8, 2013) (unpublished op.) (holding that the trial court did not err in allowing an insurance adjuster to testify regarding the plaintiffs' content inventory simply because he did not personally prepare them, but a former employee of his firm did); *see also* 32 C.J.S. Evidence § 815 (2013) ("An expert may utilize otherwise inadmissible reports prepared by others in forming his or her opinion if the facts or data are of a type reasonably

relied upon by experts in the particular field."). Travelers does not challenge the data on which Mr. Molino's opinions are based, only that they were not reviewed and/or summarized by him.

For these reasons, the Court does not find Mr. Molino's opinions subject to exclusion because they are based on hearsay or that they are "speculative." Further, the fact that he has calculated losses that might not be recoverable under the Policy does not render his opinions unreliable.[5] Moreover, Mr. Molino's opinions regarding "hardship damages" will not be presented at trial as the Court already has ruled that Plaintiffs cannot recover those damages.

For these reasons, the Court is denying Travelers' motion to exclude Mr. Molino's opinion testimony.

### To Exclude Any Evidence, Argument and/or Testimony Regarding Alleged Other Similar Fires

Travelers has denied coverage for the GMM fire that occurred on March 16, 2011 claiming, in part, that it was started by Tam Shathaia or someone acting in concert with Mr. Shathaia. It is Travelers' position– based on the opinion of its

---

[5] As this Court's November 21, 2013 opinion and order suggests, the fact that Plaintiffs did not submit a figure for their business income loss claim during the claim submission does not necessarily mean that they are precluded from recovering on this claim. (*See* ECF No. 66 at 22-25.) For this reasons and others, Mr. Molino's acknowledgment that this figure was not submitted has no bearing on the admissibility of his opinion regarding business income loss.

fire investigator– that the fire originated with trash bags full of gasoline in GMM's aisles and an accelerant poured on the building roof that were ignited using an open flame device. (*See* ECF No. 50-12.) Travelers further posits that only Mr. Shathaia or someone acting in concert with him could have started the fire because GMM's doors were secured, no pre-fire movement inside the store was detected by the alarm system, and only Mr. Shathaia and his brother had keys to the store and knowledge of the alarm code.

Plaintiffs have posited that the fire was ignited by someone pouring an accelerant from the roof, through the HVAC system, and into the store. There is evidence in the record to support this theory. (*See, e.g.,* ECF No. 50 Ex. 15 at 10-15 & Ex. 10.) In support of this theory, Plaintiffs have indicated that they will offer testimony at trial of other fires that were set in a similar fashion, in the same area, and around the same time as the GMM fire. Travelers now moves to suppress this evidence, arguing that it lacks a factual foundation, is not relevant, is based on inadmissible hearsay, is based on "pure unsupported speculation and conjecture", and is more prejudicial than probative and would confuse the jury even if admissible. The Court disagrees with Travelers.

Contrary to Travelers' assertion, there is admissible evidence concerning similar fires, in close proximity to GMM, that occurred near enough in time to

make them relevant to the issue of whether the GMM fire was set by Mr. Shathaia (or someone acting in concert with him) or a stranger. Specifically, Lieutenant Dennis Richardson, a fire investigator for the Detroit Fire Department, testified during his deposition in this matter that he investigated three fires at party stores the same week as the GMM fire. (*See* ECF No. 50-15 at 22.) He further testified:

> [W]e get those party store fires frequently and most of the time a lot of those fires start in similar set ups, either somebody threw Molotov on the roof or somebody will climb up on the roof and either remove one of the HVAC units and then they'll pour gas in there or they'll actually cut a hole in the roof and pour gas in there.

(*Id*. at 27.) Mr. Shathaia testified that he was aware of other similar fires in close proximity to GMM, including one at a liquor store about a half mile away within a few months of the GMM fire. (ECF No. 52-7 at 57-60.) The Court believes that this evidence is relevant to the issue of who set the fire and is admissible, even if Lieutenant Richardson did not identify during his deposition where specifically in the City of Detroit these other fires occurred.

Further, this evidence is not based on "pure unsupported speculation and conjecture" or hearsay, as Travelers argues. Lieutenant Richardson was aware of these fires through his role as a fire investigator for the city. According to Plaintiffs, Mr. Shathaia had personal knowledge of the other fires. Finally, there is no undue prejudice to Travelers if this evidence is admitted and it is not likely to

-14-

confuse the jury. Simply because the introduction of this evidence might cause the jury to reject Travelers' theory as to how the fire was started does not require its exclusion.

For these reasons, the Court is denying Traveler's motion to exclude any evidence, argument and/or testimony regarding alleged other similar fires.

Accordingly,

**IT IS ORDERED**, that Defendant's Motion *In Limine* to Exclude Evidence Regarding the Arrest of Two Individuals for Larceny Five Hours After the Fire Except for the Limited Purpose of Proving Fraud (ECF No. 45) is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendant's Motion *In Limine* to Preclude Evidence, Argument and/or Testimony Regarding Travelers' Alleged Wrongful Denial of Plaintiffs' Claims (ECF No. 46) is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED**, that Defendant's Motion *In Limine* to Exclude the Testimony of Plaintiffs' Expert Jeff Molino (ECF No. 47) is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendant's Motion *In Limine* to Exclude Any Evidence, Argument, or Testimony Regarding Alleged Other Similar Fires is **DENIED**.

Dated: January 16, 2014                s/PATRICK J. DUGGAN
                                       UNITED STATES DISTRICT JUDGE

Copies to:
Raechel M. Badalamenti, Esq.
Elizabeth P. Roberts, Esq.
Michele A. Chapnick, Esq.